JOHN PEDERSON, APPELLANT, V. SOUTH OMAHA NATIONAL BANK, APPELLEE.

FILED JUNE 15, 1897.   No. 7313.

Bank Deposit: TRUST FUNDS: LIABILITY OF BANK: EVIDENCE.  The evidence in this case examined and *held* not to justify the claim of the appellant that the appellee, a bank, should be held liable as a trustee for the amount of the proceeds of a sale of cattle made by a live stock commission firm, which proceeds, in the name of said firm, had been deposited with the said bank, notwithstanding the fact that the said bank in the ordinary course of business had paid out a part of the same on the checks of the said firm and had applied the balance, the proceeds of the collection of a collateral, on the indebtedness of said firm to said bank for the security of which indebtedness the said collateral had been transferred to the bank before the cattle had been sold.

APPEAL from the district court of Douglas county. Heard below before AMBROSE, J.   *Affirmed.*

*Smith & Sheean,* for appellant.

*Charles Offutt, contra.*

RYAN, C.

This was an action in equity brought in the district court of Douglas county to hold the appellee liable for the proceeds of the sale of a certain car load of cattle. The cattle were shipped from Seward by the appellant on the 30th day of July, 1893.   They were sold on July 31, 1893, by Gasman & Dudley, a live stock commission

firm doing business at the stock yards in South Omaha. The proceeds of this sale amounted to $952.42, out of which there were paid certain charges of freight, yardage, and the compensation of the commission firm, so that the net proceeds were $907.07. This entire amount the firm of Gasman & Dudley, in its own name and with the knowledge of appellant, deposited in the bank which is the appellee herein. There is no evidence that this bank knew or had any reason to suppose that appellant was interested in the deposit above referred to, which was made on July 31, 1893. On the same day, in South Omaha, the firm of Gasman & Dudley gave to appellant the individual check of that firm for the above named net sum of $907.07. This check was drawn on the appellee payable to the order of the Jones National Bank, Seward. On the day after it was drawn the appellant took this check to the Jones National Bank at Seward, and on said check received the full amount therein named. On the 3d day of August, 1893, this check was presented for payment to appellant and payment was refused, thereupon there was a protest for non-payment. This check was then returned to the bank at Seward, and upon being notified of its non-payment, the appellant took up this check and is now its holder. The firm of Gasman & Dudley ceased to do business on August 2, 1893, and at that time was insolvent. Mr. Dudley, the sole member of the firm remaining in this state, testified that the firm of Gasman & Dudley was probably insolvent on July 31, 1893. The proceeds of the sale of appellant's car load of cattle were lost through the insolvency of Gasman & Dudley, and the question now presented is whether this loss should be borne by the appellant or by the appellee. The district court was not of the opinion that a trust character had been so impressed upon the deposit in the bank that on account of such trust character it could be claimed by the appellant, and accordingly dismissed the action. The theory of appellant is that the firm of Gasman & Dudley was insolvent when the cattle

were sold on July 31; that said firm on that day was indebted to appellee, and from the fact that the instrument by virtue of which the deposit was made showed that the amount of such deposit had been derived from the sale of cattle made by Gasman & Dudley as agent, and not as the property of said firm, this deposit was impressed with a trust character. The manner in which it is insisted the appellee has diverted this fund from its proper use is described in the brief filed on behalf of appellant in this language: "The facts are that Gasman & Dudley were insolvent and were closed up by the defendant August 1st, 1893. Before this order from Swift & Co. for the proceeds of the plaintiff's stock was deposited in the defendant bank checks drawn by Gasman & Dudley in favor of other parties had been presented to and paid by the defendant bank, and an overdraft amounting to several hundred dollars existed against Gasman & Dudley. When this order was deposited it was used by the defendant bank to liquidate this overdraft. In other words, the proceeds of the plaintiff's stock was, without the knowledge or consent of the plaintiff, or Gasman & Dudley either, for that matter, applied by the bank to the payment of a pre-existing debt in favor of the defendant bank and of Gasman & Dudley."

There was introduced in evidence by appellant a written transcript from a book of the appellee showing the condition of the bank's account in 1893 of Gasman & Dudley, between the 14th day of July and the 2d day of August, inclusive of both days just named. This account shows that on the 14th, 15th, 18th, 22d, 24th, 25th, and 26th days of July of the year named the account of said firm with appellee was overdrawn in different amounts, ranging from $27.35 to $1,800.20. On July 17, 19, 20, 21, 27, 28, and 29 there were credits in favor of said firm in said book in different amounts, the least of which was $143.24 and the greatest was $3,991.60. On the morning of July 29th there was a balance to the credit of Gasman & Dudley of $584.25. On that day the account of the firm

11

was credited with $1,500 in one item and $2,283.33 in another. There were checks paid that day out of this account to the sum of $4,102.90. This left to the credit of Gasman & Dudley the sum of $264.68 to commence business with on the morning of July 31st, for the intervening day, July 30th, was Sunday. On July 31st there was made but one deposit, of the sum of $1,034.90. The original deposit slip accompanying this deposit was introduced in evidence and showed that the $1,034.90 was made up of four items, respectively of $952.42, $30.40, $26.32, and $25.76. Of these the first was the amount of the proceeds of the sale of appellant's cattle, but there was no indication upon this deposit slip from whence any of the items therein described had been derived. On the same day that this deposit was made there were paid nine checks drawn by Gasman & Dudley to the aggregate amount of $1,411.44. The appellant urges that the appellee should not be allowed credit for the payment of one of these checks, in particular,—that of John P. Danforth,—for the sole reason that this check, as appellant insists, was paid before the deposit was made on the 31st and therefore must have been paid by allowing the firm of Gasman & Dudley to overdraw its account. This conclusion is reached by assuming that the deposit, as was usually the case with deposits of the proceeds of sales, must have been made late in the afternoon, whereas, as shown by the testimony of Mr. Danforth, this check was cashed before 12 o'clock noon of that day. It may well admit of doubt whether or not, in the face of the general finding of the court in favor of the bank, this presumption should be entertained. It must, however, be borne in mind that the bank had no special knowledge of the nature of the deposit which included the proceeds of the sale of the cattle of appellant. By the testimony of Mr. Danforth it was shown that he received a check drawn in his favor on the 29th and that he presented it for payment on the first secular day thereafter. This check was against the proceeds of sale of cattle made on the 29th of

July, and on that day deposited to the credit of Gasman & Dudley, just as were the proceeds of the sale of the cattle of appellant on the second day afterward.

It seems to us that there is in this transaction no circumstance which should entitle appellant to hold the bank liable for not withholding the payment of the check of Mr. Danforth; that the check for the proceeds of the sale of appellant's cattle might be paid when presented, as it subsequently was on August 3d. There were two checks on August 1st, of the aggregate amount of $56.48, against the account of Gasman & Dudley, and there was a deposit in said account of $128.35 on the same day —reducing the overdraft of said firm to $39.99. With this balance against that firm its business operations began on August 2, 1893. On this day there was made one deposit of $160.43, followed by another of $1,498.50. There were three checks, the cost of transmitting a telegram, and a demand note in favor of the bank with interest thereon of the entire amount of $1,501.67, together with a fee for collection and exchange, of $2. This left a balance to the credit of Gasman & Dudley of only 17 cents, and with this balance in its favor that firm ceased to do business. The appellant has directed his argument against but one item of this day's transactions and that item is the charge of the amount of the demand note and interest. This note was given by Gasman & Dudley to appellee on July 29 and the firm just mentioned was credited with the face value thereof on that day. Contemporaneously with the execution of this note there was given the bank, as collateral security to said note, a draft for $1,500 drawn on Henry Hobson, a shipper of live stock at Cozad. This draft was forwarded for collection and was paid in Cozad on July 31. The net proceeds of this collection, amounting to $1,498.50, were received by appellee on August 2d, and at once credited in its account with Gasman & Dudley. At the same time the amount of the demand note was entered as a debit item in the same account. Aside from the small expense of making

and remitting this collection, which expense was charged against Gasman & Dudley, this transaction amounted to giving a credit to that firm on the 29th of July of $1,500, —the amount of the demand note of that date,—the forwarding for collection of an equal claim put up as collateral to said note, and, upon the receipt of the proceeds of this collection, the taking up therewith of the demand note with its accrued interest. This collateral was received for a specific purpose by the bank and applied to that purpose. The bank made this demand loan in the ordinary course of business and in the ordinary course of business received collateral security upon said loan, and this collateral was forwarded as a collection by the bank solely for its own benefit. The mere fact that the amount of this particular collection, when received by the bank, was entered in its account with Gasman & Dudley as a credit in favor of that firm, did not change its intrinsic character nor deprive the appellee of the right to apply it as the proceeds of the collection of collateral security held by it. It is clear from this analysis of the items concerning which appellant has complained, that there is in this case no ground for the application of the rule which was enforced in *Cady v. South Omaha Nat. Bank,* 46 Neb., 756, and the judgment of the district court is accordingly

                                                      AFFIRMED.

NORVAL, J., not sitting.